UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ROMANO KINCAID**, | ) | Case No. 1:09 CV 0890 |
| | ) | |
| Petitioner, | ) | Judge Patricia A. Gaughan |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **ROBERT WELCH**, | ) | (Regarding ECF #1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner Romano Kincaid, a state prisoner, has applied for habeas corpus relief under 28 U.S.C. §2254 with the assistance of counsel.  On May 8, 2006 Kincaid was convicted in the Cuyahoga County Court of Common Pleas following trial to a three judge panel on two counts for aggravated robbery of Michael Beaufort and two counts for the  murder of Raymond Maxwell, all with firearm specifications.  Kincaid calculates that his sentence is 22 years. This is considerably less than the original capital penalty sought in the indictment, which had included two counts of aggravated murder.


***I.  Procedural History:***

Kincaid timely, but unsuccessfully, appealed to Ohio's Eight District Court of appeals. He was later remiss in his appeal to the Ohio Supreme Court, but his motion for delayed appeal was granted, and he presented the following propositions of law for review:

1.      The State failed to present sufficient evidence to sustain a conviction against Appellant.

2.      Appellant's convictions are against the manifest weight of the evidence.

3.      The trial court erred by refusing to consider the lesser included offense of

1:09 CV 0890                                   2

involuntary manslaughter.

4.    The trial court erred by ordering convictions for separate counts of murder and
      aggravated robbery to be served consecutively because the offenses are allied
      offenses pursuant to R.C. 2941.25 and they are part of the same transaction under
      R.C. 2929.14.

5.    The trial court erred by ordering Appellant to serve a consecutive sentence
      without first considering a concurrent sentence and by making findings not
      supported by the record.

      (Respondent's Ex. 14, ECF # 6-1)

However, his appeal was dismissed by the Ohio Supreme Court for lack of a substantial

constitutional question. See *State v. Kincaid*, 2007 WL 1366428, 2007-Ohio-2228 (Ohio App. 8

Dist. May 10, 2007), *motion for delayed appeal granted*, 114 Ohio St.3d 1506, 872 N.E.2d 949,

2007-Ohio-4285 ( Table Aug 29, 2007), *appeal not allowed*,  116 Ohio St.3d 1475, 879 N.E.2d

783, 2008-Ohio-186389 (Table Jan 23, 2008).


**II.  Grounds for Habeas Corpus Review:**

Kincaid has exhausted his remedies in state court and now presents three grounds for

federal habeas review:

**GROUND ONE:** Fourteenth Amendment

**Supporting Facts:** Petitioner was convicted of insufficient evidence. There was no
evidence presented which would convince a rational factfinder of petitioner's guilt.

**GROUND TWO:** Fourteenth Amendment

**Supporting Facts:** Petitioner was convicted of murder. However, the trial judges failed
to consider the lesser offense of involuntary manslaughter as there was insufficient
evidence to convince a rational factfinder that petitioner had a purpose to cause death of
another which was a required element of murder.

1:09 CV 0890                                     3

**GROUND THREE:** Fourteenth Amendment

**Supporting Facts:** Petitioner was sentenced consecutively for aggravated robbery and murder.  These offenses were part of the same transaction and should have been merged. Consequently, petitioner was sentenced to multiple punishments in violation of the Fifth and Fourteenth Amendments.

This case is referred to the undersigned for report and recommended disposition pursuant to LR 72.2 by the Honorable Judge Patricia A. Gaughan.

### III.  State Decision's Factual Findings:

"On habeas review, the state court of appeals's findings of fact must be presumed correct, and can only be discredited if the petitioner can show, by clear and convincing evidence, that the state court's findings were erroneous. 28 U.S.C. § 2254(e)(1)."  *Mitzel v. Tate,* 267 F.3d 524, 537 (6th Cir. 2001); and see  *Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S.Ct. 2317, 2325,162 L.Ed.2d 196 (2005). The facts of this case are unchallenged and are set forth in detail by the state appellate court, as follows:

{¶ 3} These charges arose out of a fatal shooting that occurred on the evening of June 25, 2005. On that evening, Michael Beaufort ("Beaufort") was robbed at gunpoint by three men while seated in the front seat of his car in the parking lot of the Westropp Manor apartment building. During the robbery, Raymond Maxwell ("Maxwell"), who was seated in the back seat, was shot in the chest and died as a result of his injuries. Shortly after the incident, members of the Cleveland Police Department apprehended defendant as well as the other co-defendants.

{¶ 4} Defendant waived his right to a jury and the matter proceeded to a three-judge panel bench trial on April 27, 2006. The State first called Beaufort, who testified that he and Maxwell had been friends for over 19 years. He testified that on the afternoon of June 25, 2005, he and Maxwell were driving around town and Beaufort was selling drugs. Beaufort received a phone call from a woman named "Tina," later identified as co-defendant Isler, who wanted to get together with him that night. Beaufort and Maxwell picked up "Tina" at the Harborview apartment complex.

1:09 CV 0890                                4

{¶ 5} Beaufort, Maxwell, and "Tina" drove around for awhile. At some point, "Tina" asked Beaufort if she could use his cell phone so that she could call a girlfriend for Maxwell. "Tina" made arrangements to meet her friend at the Westropp Manor apartment building. Beaufort, Maxwell, and Tina arrived at the Westropp Manor and Tina said she was going inside to get a drink. Beaufort and Maxwell remained in the car. However, Maxwell got into the back seat of the car so that when "Tina" came out with her friend, he could sit next to her in the back seat.

{¶ 6} Shortly after Maxwell got into the back seat of the car, three men appeared at the car; co-defendant Nix was positioned near the back fender of the car, and Cochran and defendant at the driver's side car window. Beaufort recognized Cochran and the defendant, who he knew as "Buddy Row." Defendant was wearing a red bandana over his face and was holding a gun. Defendant held the gun to Beaufort's face, went through his pockets and took about $300 in cash. Meanwhile, Maxwell, who was still seated in the back seat, opened the back door. Beaufort saw the interior car light go on when the door opened. Defendant fired his gun into the back seat and shot Maxwell in the chest, penetrating both lungs.

{¶ 7} Immediately after the shooting, Nix, Cochran, and defendant took off running. Maxwell, though injured, was able to run away. Beaufort initially ran away, but then went back to his car to look for Maxwell. Beaufort found Maxwell not far from the parking lot. Maxwell was bleeding and appeared to be in shock. Beaufort began crying and screaming for help. The Cleveland Police arrived on the scene shortly thereafter, called for an ambulance, and began to search for the assailants. The Cleveland Police apprehended the defendants within 15 minutes of the shooting. While still at the scene, Beaufort was able to positively identify defendant as the shooter.

{¶ 8} Next, co-defendant Nix testified that he and Cochran met up at around 10:00 p.m. on the night of June 25, 2005 to sell drugs. They met up with defendant, a friend of Cochran's. Nix did not know defendant prior to this evening. The three drove to the Westropp Manor apartment complex and Cochran told Nix that they were going to rob someone. The three got out of the car and Cochran put a white towel over the lower part of his face and defendant put a red scarf over his face. Nix saw defendant take out a gun. Nix positioned himself as the "lookout" at the rear of the car. He saw defendant put a gun to the driver's head and then heard the gun go off. He saw a man, later identified as Maxwell, get out of the back seat and start running. Nix also took off running towards Cochran's house. Cochran and

defendant met Nix at Cochran's house within minutes. Cochran's girlfriend, "Tina," arrived at Cochran's house a few seconds later. Approximately five minutes later, the Cleveland Police arrived and everyone ran. The police found Nix and Cochran about 15 minutes later hiding under a porch and took them to the scene. Nix identified defendant as the shooter. Nix then went to the police station and made a statement. FN1

FN1. Nix entered into a plea agreement and received five years in prison in exchange for testifying against defendant.

{¶ 9} The State's next witness was co-defendant ["Tina"] Isler.  She testified that she was Cochran's girlfriend at the time of the shooting and that she made arrangements to meet Beaufort on the night of June 25, 2005 so that Cochran could rob him. Isler testified that she had met Beaufort several months earlier at Cochran's request to "scope him out" and Beaufort knew her as "Tina." On the afternoon of June 25, 2005, Isler telephoned Beaufort as "Tina" and asked to meet up with him. Beaufort and Maxwell picked Isler up at the Harborview apartments and the three of them drove them to the Westropp Manor apartments. She testified that she got out of the car, walked to the front of the building where Cochran, Nix, and defendant were waiting, and told them that Beaufort was waiting in the car behind the building. Isler testified that the three men went to the back of the building and that minutes later she saw the three men running to Cochran's house. The police arrived shortly thereafter and all three men fled.

{¶ 10} Next, several officers of the Cleveland Police Department testified. Detective Gerald Crayton testified that he responded to the scene and that Nix made an oral statement to him and identified defendant as the shooter. Next, Detective Rodney McClendon testified that he spoke with defendant at the scene and defendant said he had been cooking crack at his house. Next, Sergeant Nathan Willson testified about the bullet that killed Maxwell. Detective Frank Costanzo testified that he performed gunshot residue swab tests on the defendants. Officer Michael Legg testified that he responded to Cochran's house after the shooting and saw Nix and Cochran run away. He also ordered defendant to get out of his car and lay on the ground. Officer Robert Taylor testified that he apprehended Nix and Cochran after they were found hiding under a porch. Sergeant Brian Miller testified that Beaufort positively identified defendant in a cold-stand as the shooter at the scene shortly after the shooting. Vice Squad Detective Stephanie Murphy testified that she spoke with Beaufort at the scene of the crime and relayed his descriptions of the suspects to the other officers. Homicide Detective Joselito Sandoval testified that Nix positively identified defendant in a cold-stand as the shooter at the scene shortly after the shooting.

1:09 CV 0890                                     6

{¶ 11} County Coroner Dr. Elizabeth K. Balraj, M.D., testified that Maxwell died
as a result of a perforating gunshot wound to the chest. The bullet penetrated both
of Maxwell's lungs and exited from the lower back area. Maxwell would have been
able to run away after this injury, although it was ultimately the cause of his death.

{¶ 12} For the defense, Hazel Davis testified that she lives in the Westropp Manor
apartments and saw Beaufort in his car. She asked Beaufort what he was doing and
he told her that he was waiting for someone. Several seconds later, she heard a
gunshot and someone saying that someone got shot. Next, attorney Ian Friedman
testified that he was initially hired to defend the defendant. He met with Nix and
Cochran and testified that Nix indicated to him that defendant's firing of the gun
could have been an accident. Finally, Juanita Kincaid Allen, defendant's mother,
testified that she knew that defendant and Maxwell knew each other. She testified
that she spoke with defendant on the night of the shooting and that he appeared
normal.

{¶ 13} At the conclusion of all testimony, the trial court advised the parties that it
would consider the lesser-included offense of murder with regard to counts one
and two. The trial court denied defendant's request to also consider involuntary
manslaughter.

{¶ 14} On May 8, 2006, defendant was found guilty of two counts of the lesser-
included offense of murder of Maxwell with three-year firearm specifications and
guilty of two counts of aggravated robbery of Beaufort with three-year firearm
specifications. Defendant was found not guilty of aggravated robbery of Maxwell.
On June 8, 2006, defendant was sentenced to consecutive terms in prison for a
total sentence of life in prison with the possibility of parole after 22 years.

*State v. Kincaid*, 2007 WL 1366428, at ¶¶3-14.

## IV. *Standard of review:*

For purposes of Federal collateral review, all claims adjudicated on their *merits* by state

courts are governed by 28 U.S.C. §2254(d)(1) and (2), which extends the permissible range of

Federal review of state convictions as follows:

1:09 CV 0890                                   7

>(d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - - -
>
>(1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  (emphasis added.)

The standard for federal habeas court in evaluating state-court rulings is highly deferential, which demands that state-court decisions be given benefit of the doubt.  State court decisions regarding claims adjudicated on the merits are subject to federal habeas relief only if they are "contrary to" clearly established Supreme Court law, involve an "unreasonable application" of clearly established Federal law, or are based on "an unreasonable determination of the facts in light of the evidence presented in a State court proceeding."  28 U.S.C.A. §2254(d). *Woodford v. Viscotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002).  The phrases "contrary to" and "unreasonable application" are not the same.

A state court decision is "contrary to" Supreme Court precedent when either "the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision ... and nevertheless arrives at a result different from [Supreme Court] precedent," or "'applies a rule that contradicts the governing law set forth' in those precedents.'"  *Brumley v. Wingard,* 269 F.3d 629, 638 (6th Cir.2001)(*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); and see *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).  When the state decision does not identify what legal precedent or

1:09 CV 0890                                          8

standard was used as the foundation for its decision, a deferential standard of review applies,

which liberally states, "that a state court need not even be aware of all precedents, 'so long as

neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v.

Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting *Early v. Packer*, 537

U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263 (2000) (*per curiam*).


        Alternatively, a state court decision is an "unreasonable application" of Supreme Court

precedent when the state court identifies the correct governing legal principle from the Supreme

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. See

*Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Williams*,

529 U.S. at 413. Or conversely stated, "a federal court may grant relief when a state court has

misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which

the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535,

156 L.Ed.2d 471 (2003)(quoting *Lockyer*, 538 U.S. at 76, 123 S.Ct. at 1175).  Under the

"unreasonable application" clause, a  federal habeas court must do more than determine a state-

court decision applied clearly established federal law incorrectly; rather, it is the petitioner's

burden to show that the state court applied federal law to the facts of his case in an "objectively

unreasonable" manner.  *Woodford*, 123 S. Ct. at 360.


### V. Ground One- Sufficiency of the Evidence:

        In his first ground for relief, Kincaid alleges he was convicted on two counts of  murder

1:09 CV 0890                                    9

without sufficient evidence to support those convictions.  (Habeas Petition, p. 4). The federal

constitutional concept of sufficiency of the evidence springs from the Fourteenth Amendment

Due Process prohibition against conviction except upon proof of guilt beyond a reasonable doubt.

See *Jackson v. Virginia,* 443 U.S. 307, 309-16, 99 S.Ct. 2781, 2783-88, 61 L.Ed 2d 560

(1979)(citing *In re Winship*, 397 U.S. 358, 362-63, 90 S. Ct. 1068, 1071-72,  25 L.Ed.2d 368

(l970)). Due process mandates that the record evidence must reasonably support a finding of guilt

beyond a reasonable doubt. *Jackson*. 443 U.S. at 318-319, 324, 99 S.Ct. at 2789, 2791.   In

matters of habeas corpus review (where naturally the petitioner stands convicted), the standard is

not whether the court believes the petitioner is guilty but "whether after viewing the evidence in

the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 3l9, 99 S.Ct.

at 2789 (emphasis in original); *Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225,

237 (1992). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct*

guilt or innocence determination, but rather whether it made a *rational* decision to convict or

acquit."  *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993).

*A. Argument and State Decision:*

        Kincaid's arguments to the Ohio Supreme Court, as repeated in his traverse, challenge

only the murder convictions- and not the aggravated robbery convictions.   Specifically, Kincaid

claims that while his murder conviction was for the death of Raymond Maxwell, "[t]he evidence

presented indicated that the intended victim of any aggravated robbery was Michael Beaufort and

not Raymond Maxwell." He relies on the evidence from the trial that the intended victim of any

planned robbery was Michael Beaufort and not Raymond Maxwell, and that there was no

1:09 CV 0890                                          10

evidence that Kincaid knew that Maxwell was in the vehicle. (Traverse, p. 2, and Memorandum

in Support of Jurisdiction pp. 3-5, Resp. Ex. 14).  Kincaid faults the State for no evidence to

indicate any gunshot or any gunshot residue of the interior of the vehicle on the driver's side, on

the headrest, on the console or the rear seat which may have indicated the distance of the shot.

Essentially, Kincaid claims the state failed to set forth sufficient evidence to prove he possessed

the specific intent to cause Raymond Maxwell's death and the death was an "accident."

In overruling his sufficiency of evidence claim on appeal, the state appellate court

explained:

> {¶ 20} Here, defendant was convicted of two counts of murder in violation of R.C.
> 2903.02(A) and (B). R.C. 2903.02(A) provides that "no person shall purposely
> cause the death of another ." To find the defendant guilty of murder under R.C.
> 2903.02(A), the fact finder would have to find that the defendant purposely caused
> the death of Maxwell.

> {¶ 21} A person acts "purposely when it is his specific intention to cause a certain
> result, or, when the gist of the offense is a prohibition against conduct of a certain
> nature, regardless of what the offender intends to accomplish thereby, it is his
> specific intention to engage in conduct of that nature." R.C. 2901.22(A).

> {¶ 22} Intent to kill "may be deduced from all the surrounding circumstances,
> including the instrument used to produce death, its tendency to destroy life if
> designed for that purpose, and the manner of inflicting a fatal wound." State v.
> Eley, 77 Ohio St.3d 174, 180, 1996-Ohio-323.

> {¶ 23} "Intent to kill may be reasonably inferred from the fact that a firearm is an
> inherently dangerous instrument, the use of which is likely to produce death." State
> v. Mackey (1999), Cuyahoga App. No. 75300; State v. Collins, Richland App.
> No.2003-CA-0073, 2005-Ohio-1642. Specifically, the act of pointing a firearm and
> firing it in the direction of another human being is an act with death as a natural
> and probable consequence. State v. Collins, supra; State v. Turner (1997), Franklin
> App. No. 97APA05-709; State v. Brown (1996), Cuyahoga App. No. 68761; see,
> also, State v. Smith (1993), 89 Ohio App.3d 497, 501 (finding that pointing a gun
> at a group of people less than 20 feet away and shooting at least one shot could be

used by the trier of fact as proof of intention to kill).

{¶ 24} Here, the evidence at trial showed that defendant aimed his gun into the back seat and fired the gun as Maxwell was attempting to flee the vehicle. This act is a strong indication that defendant intended to shoot Maxwell. Indeed, given the close range, a trier of fact could construe the intention to shoot as proof of an intention to kill. This was a purposeful action that cannot be deemed to fall to the level of "accidental."

{¶ 25} Defendant was also convicted of murder in violation of R.C. 2903.02(B), which provides that "no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." R.C. 2911.01(A)(1) defines aggravated robbery as "no person, in attempting or committing a theft offense * * * shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶ 26} Here, the defendant was convicted of committing aggravated robbery against Beaufort.FN2 Defendant robbed Beaufort at gunpoint while Maxwell sat in the back seat. When Maxwell tried to flee the car, defendant turned the gun onto Maxwell and shot him. Clearly, the death of Maxwell was the proximate result of defendant committing aggravated robbery. But for the aggravated robbery of Beaufort, Maxwell would not have been shot.

FN2. Indeed, defendant did not even appeal his conviction for aggravated robbery.

{¶ 27} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that defendant had committed the crimes of murder as defined in R.C. 2903.02(A) and (B). Accordingly, the State met its burden of production regarding each element of the crime of murder and there was sufficient evidence to support defendant's convictions.

{¶ 28} Although defendant presented testimony from attorney Friedman that he did not intend to shoot anyone, and that it was an accident, the three-judge panel, as trier of fact, was free to accept or reject any and all of the evidence offered by the defendant and assess the witness's credibility.

1:09 CV 0890                                            12

{¶ 29} . . . . Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of the crimes of murder.

*State v. Kincaid,* 2007 WL 1366428, ¶¶ 20-29. [1]


*B. Habeas Corpus Analysis:*

Returning to Kincaid's argument, respondent did not provide a trial transcript in this matter for federal review of the trial record.  The Sixth Circuit has stressed the importance of a the state record in making the necessary assessments under §2254(d) with respect to sufficiency of the evidence claims. See *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006). The Sixth Circuit, however, has held that the district court need not examine the trial records if two conditions are satisfied:

(1) the state court opinions summarize the trial testimony or relevant facts; and

(2) the petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion.

*Clark v. Waller*, 490 F.3d 551, 556 (6th Cir. 2007), *cert. denied*, 128 S.Ct. 630 (2007) (*citing Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993)).   Both of the aforementioned conditions are satisfied: (1) The state court thoroughly summarized the trial testimony and relevant facts; and,

---

[1] Implicit in the state appellate court's reasoning is Ohio's doctrine of transferred intent. The doctrine of transferred intent is "firmly rooted in Ohio law."  *Bradshaw v. Richey*, 546 U.S. 74, 77, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005)(citing *State v. Sowell*, 39 Ohio St.3d 322 (1988); *Wareham v. State*, 25 Ohio St. 601 (1874)). The state statute set out the elements of murder as purposely causing the death "of another," and "[t]here is no reason to read 'another'(countertextually) as meaning only 'the actual victim[.]'" *Bradshaw*, 546 U.S. at 77.

1:09 CV 0890                                    13

(2) Kincaid rests his insufficiency of the evidence claim on a alleged lack of evidence regarding

proof of specific intent to cause Raymond Maxwell's death.  As such, Kincaid's sufficiency of the

evidence claim does not depend on the federal court's own obtention of the facts used to support

the murder convictions and there is no need for this court to reference the trial transcript in order

to adjudicate this claim. The initial concern over the lack of the state record has been overcome,

so federal review may ensue over the sufficiency of the evidence.


        The state appellate court applied *Jackson*'s standard of review through Ohio Supreme

court precedent which adopted that measure of sufficiency of the evidence. See *State v. Kincaid*,

2007 WL 1366428, *3 (Ohio App. 8 Dist.)(*citing State v. Jenks*, 61 Ohio St.3d 259

(1991)(syllabus ¶ 2). The state decision scrutinized the "essential elements" of the state offenses

consistent with *Jackson,* and the U.S. Supreme Court's elaboration that  its "standard must be

applied with explicit reference to the substantive elements of the criminal offense as defined by

state law."  *Jackson,* 443 U.S. at 324 n.16, 99 S.Ct. at 2791 n. 16.  Since the state decision

acknowledged the correct factors for adjudicating this claim, and applied these factors, there is no

issue over whether the state court applied a rule that contradicted governing law. Accordingly,

review of  this matter has progressed past the issue of whether the state court decision was

"contrary to" clearly established Federal law and  it is incumbent upon Kincaid to show an

"unreasonable application" of clearly established Federal law. See *Rompilla v. Beard*, 545 U.S.

374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005);*Williams v. Taylor*, 529 U.S. 362, 405-

413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct.

2527, 2535, 156 L.Ed.2d 471 (2003).

1:09 CV 0890                                    14


After setting forth the appropriate state law standards with which to judge Kincaid's intent

in committing murder, the court turned towards the  evidence presented at trial.  Focusing its

attention on evidence that showed Kincaid aimed his gun into the back seat and fired the gun at

close range as Maxwell was attempting to flee the vehicle, the state appellate court determined "a

trier of fact could construe the intention to shoot as proof of an intention to kill.  This was a

purposeful action that cannot be deemed to fall to the level of 'accidental.'" *State v. Kincaid*,

2007 WL 1366428 at *4.


The appellate court then addressed Kincaid's felony murder conviction under R.C.

2903.02(B).  In light of the definition of aggravated robbery set forth under R.C. 2911.01(A)(1),

the court noted that the set of facts before it fell "squarely under the offense of aggravated

robbery, which is a first-degree felony and an offense of violence." [2]  *State v. Kincaid*, 2007 WL

1366428 at *6 (citing *State v. Duncan*, Cuyahoga App. No. 87220, 2006-Ohio-5009).  Because

Kincaid had clearly committed aggravated robbery, the only remaining question was whether

Maxwell's death was "proximate result of the offense." The court determined, "[c]learly, the

death of Maxwell was the proximate result of defendant committing aggravated robbery.  *But for*

the aggravated robbery of Beaufort, Maxwell would not have been shot." (Emphasis added.) *Id.* at

*5.  While the court did not cite state law to support its application of the "but for" test in

determining "proximate result," such a standard is in accordance with Ohio jurisprudence.

---

[2] Aggravated robbery as defined under R.C. 2911.01(A)(1) states "no person, in attempting or committing a
theft offense, * * * shall * * * have a deadly weapon on or about the offender's person or under the offender's
control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

1:09 CV 0890                                      15

Ohio appellate courts have equated "proximate result" with the concept of "proximate cause." *See State v. Adams*, 2004 WL 1486834, at *10 (Ohio App. 11 Dist.) ('Proximate result' bears a resemblance to the concept of 'proximate cause') (*quoting State v. Losey* (1985), 23 Ohio App. 3d 93, 95, 491 N.E. 2d 379); *See also State v. Franklin*, 2008 WL 324119, at *5 (Ohio App. 10 Dist.)(engaging in "proximate cause" analysis to determine whether victim's death was a "proximate result" of appellant's committing an offense of violence under R.C. 2902.02(B)); *State v. Carroll*, 2007 WL 4555782, at *14 (Ohio App. 12 Dist.)(engaging in "proximate cause" analysis to determine whether victim's death was "proximate result" of appellant's committing an offense of violence under R.C. 2902.02(B)).  "[T]he proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred."  *Aiken v. Indus. Comm.*, 143 Ohio St. 113, 117, 28 O.O. 50, 53 N.E.2d 1018 (Ohio 1944).  This definition encompasses a sense of "but for" in that an original, wrongful, or negligent act in a natural and continuous sequence produces a result that would not have taken place without the act.  *Strother v. Hutchinson*, 67 Ohio St.2d 282, 287, 21 O.O.3d 177, 423 N.E.2d 467 (Ohio 1981).  In other words, proximate cause is "'that without which the accident would not have happened, and from which the injury might have been anticipated.'" [3] *Jeffers v. Olexo*, 43 Ohio St.3d 140, 143, 539 N.E.2d 614 (Ohio 1989)(*quoting Corrigan v. E.W. Bohren Transport Co.*, 408 F.2d 301, 303 (6th Cir. 1968)).

---

[3] Offering a more comprehensive definition of proximate cause, the court in *State v. Franklin*, 2008 WL 324119, at *6 (*citing State v. Dixon*, Montgomery App. No. 18582, 2002-Ohio-541) stated, "[i]n order for a criminal defendant's conduct to be the proximate cause of a fatal result in a felony murder case, the court must first determine whether the killings would not have occurred 'but for' the defendant's conduct.  The court must then determine whether the result varied greatly from the intended outcome or foreseeable result of the underlying crime, that is 'that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable.'"

1:09 CV 0890                                          16

While the state appellate court did not specifically address whether Maxwell's death

"might have been anticipated" in addressing Kincaid's felony murder conviction, it stated earlier

in its opinion that "the act of pointing a firearm and firing it in the direction of another human

being is an act with death as a natural and probable consequence." *State v. Kincaid*, 2007 WL

1366428, at *4.  Here, as the aggravated robbery involved the use of a loaded firearm, it is

axiomatic that death is a probable and foreseeable consequence of such and offense. Further, it

appears that Kincaid's arguments attempt to subvert Ohio's doctrine of transferred intent, which

as noted previously, is well within constitutional bounds. Both murder and felony murder in Ohio

do not require intent to kill a specific victim, only the purposeful intent to kill.


Finally, Kincaid focuses on missing pieces of evidence that could have been offered at

trial in support of the state's case referring to  the lack of evidence of gunshot residue in the

automobile, or evidence on the distance of the shot.  However, he does not address the evidence

that actually *was* presented.  By offering no clear and convincing evidence to rebut the

presumption of correctness a federal habeas court gives to the factual determinations made by a

state court, Kincaid fails to meet his burden under 28 U.S.C. § 2254(e)(1).


Kincaid's other arguments relate more to credibility, rather than sufficiency of the

evidence. While the state appellate court acknowledged that Kincaid presented some testimony

that the shooting was accidental, the court rightly noted that as the triers of fact, the three judge

panel "was free to accept or reject any and all of the evidence offered by the defendant and assess

the witness's credibility." *Id.* at *5.  The issue of credibility constitutes a challenge to the *quality*

1:09 CV 0890                                      17

of the evidence not its sufficiency.  See *Tyler v. Mitchell*, 416 F.3d 500, 505 (6ᵗʰ Cir. 2005).[4]


        Kincaid also mistakenly infuses the concept of premeditation in his argument stating that

the evidence showed no plan to hurt anyone. Premeditation is not an element of murder as defined

under R.C. 2903.02(A). [5]  For a murder conviction under Ohio Rev. Code §2903.02(A), a fact

finder must only find that Kincaid *purposely* caused the death of Maxwell.  Therefore, it is of no

consequence that "[t]here was no evidence about Maxwell prior to the robbery" or that "the

intended victim of any planned robbery was Michael Beaufort."  (Traverse, p. 2).  As previously

explained, § 2903.02(B) simply requires that "death of another" be a "proximate result" of the

aggravated robbery.


        The state appellate court meticulously followed the *Jackson* standard by making explicit

reference to the substantive elements of the criminal offense as defined by state law.  Kincaid has

not demonstrated that the state decision did not involve an "unreasonable application" of clearly

---

        [4]  As explained in *Tyler*:

> Tyler's insufficient evidence argument rests on an allegation involving witness
> credibility, which is clearly the province of the jury and not this court.  See *Herrera v.
> Collins*, 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (noting that in a
> habeas corpus action, a federal court should not make its own subjective determination of
> guilt or innocence); *see also Martin v. Mitchell*, 280 F.3d 594, 618 (6ᵗʰ Cir. 2002) (noting
> that attacks on witness credibility constitute a challenge to the quality, but not the
> sufficiency, of the government's evidence.)

        *Tyler*, 416 F.3d at 505.

        [5]  On the other hand, Ohio Rev. Code  §2903.01(A) defines **aggravated murder** as:  "No person shall
purposely, *and with prior calculation and design*, cause the death of another . . ." (emphasis added.).  R.C.
2903.01(B) defines "aggravated felony murder" as: "No person shall purposely cause the death of another . . . while
committing or attempting to commit, or while fleeing immediately after committing or attempting to commit,
kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, terrorism, or escape."

1:09 CV 0890                                              18

established federal law.  28 U.S.C. § 2254(d)(1). Furthermore, as Kincaid failed to present clear

and convincing evidence that he did not intend to kill Maxwell, he failed to meet his burden of

rebutting the presumption of correctness given to the judgment of a State court.  28 U.S.C. §

2254(e)(1).  Accordingly, Kincaid's first ground for habeas relief is denied.

Neither party appreciates that the state appellate court's findings support conviction for

**aggravated felony murder**, as in the original indictment under Ohio Rev. Code §2903.01(B).

The statute in question, §2903.01(B) reads:

> (B) No person shall purposely cause the death of another or the unlawful
> termination of another's pregnancy *while committing* or attempting to commit, or
> while fleeing immediately after committing or attempting to commit, kidnapping,
> rape, aggravated arson, arson, *aggravated robbery*, robbery, aggravated burglary,
> burglary, terrorism, or escape (emphasis supplied).

Kincaid does not challenge his two aggravated robbery convictions, so based on the state

court findings Kincaid "purposely" shot Raymond Maxwell "while committing . . . aggravated

robbery." It is a bit of a mystery how aggravated felony murder transformed into simple felony

murder (the convicted offense under §2903.02(B)) given Ohio's rule that the state court is only

required to instruct the jury (or in this nonjury matter, consider) the lesser included offense where

the evidence presented would reasonably support both acquittal on the crime charged and

conviction on the lesser included offense.  See *State v. Kidder,* 32 Ohio St.3d 279, 513 N.E.2d

311 (1987)*; State v. Davis*, 6 Ohio St.3d 91, 451 N.E.2d 772 (1983). It appears that the state trial

panel did err.  The inexplicably downplayed capital offense was supported by sufficient evidence.

1:09 CV 0890                                                    19

However, this error was beneficial to Kincaid, and would constitute "harmless error" at worst. [6]

Thus, it in not within the court's prerogative to sustain Kincaid's argument over sufficiency of the

evidence and remand this matter to the state courts for Kincaid to face the mitigation portion of a

capital trial.


***VI. Ground Two was not "Fairly Presented":***

In his second ground for relief, Kincaid contends the trial court violated his due process

rights under the Fourteenth Amendment by refusing to consider the lesser included offense of

involuntary manslaughter.  Kincaid was initially indicted on  aggravated murder and aggravated

felony murder with firearm and capital specifications, in violation of R.C. 2903.01.  At the

conclusion of testimony, the trial court advised the parties that it would consider the lesser-

included offense of murder with regard to the two counts of aggravated murder.  The trial court

denied Kincaid's request to also consider involuntary manslaughter.[7]  Kincaid alleges a lesser

included offense instruction is "a matter of due process and fundamental fairness"and the trial

court's denial of such an instruction deprived him of his right to a fair trial." (Traverse, p. 8;

Resp. Ex. 14, Memorandum in Support of Jurisdiction p.7, ).


Respondent  counters that Kincaid  procedurally defaulted his second ground for failure to

---

[6]   Under the harmless error rule any error must raise grave doubt about whether trial error  had a substantial and injurious effect or influence on a jury's verdict.  See *O'Neal v. McAnich*, 513 U.S. 432, 438-39, 115 S.Ct. 992, 995-96, 130 L.Ed.2d 947 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

[7]  Involuntary Manslaughter is defined under R.C. §2903.04(A) as: "No person shall cause the death of another . . . as a proximate result of the offender's committing or attempting to commit a felony."

1:09 CV 0890                                      20

"fairly present" this claim to the state courts. Respondent notes that Kincaid only cites Ohio

statutes and case law in his brief to the Ohio Supreme Court, never invoking the federal

constitution. Respondent argues the state courts never had the opportunity to review the federal

issues involved because the state courts were never apprised of those issues. (Resp. Answer, p.

15). Kincaid, on the other hand, does not respond to respondent's procedural default argument.

He parrots his arguments from state court in hopeful expectation of a different outcome.

To "fairly present" a federal constitutional claim to a state court, a petitioner must give the

highest court in the state a full and fair opportunity to rule on his claims. See *Manning v.

Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). "A petitioner can take four actions in its brief

which are significant to the determination as to whether a claim a claim has been fairly presented:

(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases

employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or

in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging

facts well within the mainstream of constitutional law." *Clinkscale v. Carter*, 375 F.3d 430, 437

(6th Cir. 2004)(quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *McMeans v.

Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987),

*cert denied*, 532 U.S. 958 (2001). General allegations of the denial of rights to a "fair trial" and

"due process" do not "fairly present" claims that specific constitutional rights were violated.

*McMeans*, 228 F.3d at 682, citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir.1984).

Kincaid's references to the Due Process Clause and fair trial were "not sufficient to alert a state

court that an appellant is asserting the violation of a specific constitutional right." *McMeans,* 228

F.3d at 682.

1:09 CV 0890                                    21

Failure to fairly present the federal ground to the state's highest court constitutes a

procedural  bar to federal habeas corpus review and the failure to present the ground to the state's

highest court provides an adequate and independent state procedural rule to bar habeas review.

See *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.

1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied,* 546 U.S.821 (2005).


Kincaid may overcome a procedural bar by a  demonstration of "cause" and "prejudice" to

excuse the failure to present a constitutional claim to the state's highest court, or alternatively by

showing actual innocence.  See *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S.Ct. 1587,

1590-1592, 146 L.Ed.2d 518 (2000); *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 2076, 165

L.Ed.1 (2006); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971).

Kincaid does not present any argument for either cause or prejudice, and as explained under the

first ground, there was sufficient evidence to support the convictions. He has not demonstrated

actual innocence for actual innocence means "factual innocence not mere legal insufficiency."

*Bousley v. U.S.*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)


### VII. Ground Three- Multiple Punishments:

*A. Argument and State Decision:*

In his third ground for relief, Kincaid claims the trial court erred by imposing consecutive

sentences for his aggravated robbery and murder convictions.  He states that "these offenses were

part of the same transaction and the sentences should have merged."  (Doc. #1, Petition p. 5).  He

phrased this ground to the Ohio Supreme Court as, "The trial court erred by ordering convictions

1:09 CV 0890                                        22

and consecutive sentences for separate counts of felony murder and aggravated robbery and aggravated burglary because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14." (Resp. Ex. 14, Memorandum in Support of Jurisdiction "Assignment of Error IV" p. 9, ECF # 6-1, 239/297).


The Fifth Amendment double jeopardy clause protects a person from being "twice put in jeopardy of life or limb" for the "same offence," and applies to the States through the Fourteenth Amendment. See *Benton v. Maryland*, 395 U.S. 784, 794-95, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It offers three distinct protections: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See *United States v. Davis*, 306 F.3d 398, 417 (6th Cir.2002)(citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)); and see *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 221, 2225, 53 L.Ed.2d 187 (1977).  Kincaid's third ground concerns the "final component" of double jeopardy protection and "[i]n contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy-protection against cumulative punishments-is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 2540 - 2541, 81 L.Ed.2d 425 (1984).


The state appellate court focused on the statutory elements of the respective violations charged and determined that "felony murder, under R.C. 2903.02(B), is not an allied offense with aggravated robbery under R.C. 2911.01(A)(1), because felony murder can be committed without

1:09 CV 0890                                             23

the commission of an aggravated robbery, and aggravated robbery can be committed without the

commission of murder.  See *Kincaid*, 2007 WL 1366428 at ¶¶ 32-43.


        While Kincaid did not specifically raise the double jeopardy clause, and the state decision

did not specifically address double jeopardy, the law is clear that the double jeopardy clause bars

multiple prosecutions for a single act unless the act can be prosecuted and punished under

different statutory provisions that require proof of different elements, or where the State

legislature specifically authorized cumulative punishment under two statutes regardless of

whether they proscribed the same conduct. *See Blockburger  v. United States,* 284 U.S. 299, 304,

52 S.Ct. 180, 76 L.Ed.2d 306 (1932); *Missouri v. Hunter*, 459 U.S. 359, 368-69, 103 S.Ct. 673, 74

L.Ed.2d 535 (1983); and see *Ohio v. Johnson*, 467 U.S. at 499-500.


        Respondent, noting the lack of a double jeopardy argument superficially, contends that

federal review of this third ground is also barred due to a lack of "fair presentation." That is

incorrect. First, Kincaid did refer to the U.S. Constitution with respect to his allied offenses of

similar import argument. Kincaid's presentation of his multiple punishment issue to the Ohio

Supreme Court was within the "mainstream" of constitutional law. A petitioner need not recite

"book and verse on the federal constitution." *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir.

2006)(quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.2003)). To be within the

"mainstream" of constitutional law the argument need not invoke the U.S. Supreme Court's

standard for assessment. See *West v. Bell*, 550 F.3d 542, 563 (6th Cir. 2008). Kincaid's contention

referencing the Federal Constitution and the prohibition against cumulative punishment under

1:09 CV 0890                                24

state law was sufficient to alert the Ohio Supreme Court with this "evocative language."

Second, Kincaid's presentation of his multiple punishment issue to the Ohio Supreme Court fell into the third of the *Franklin v. Rose* categories for "phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right." Respondent critically overlooks that the Ohio Supreme Court links analysis of "allied offenses of similar import" to *Blockburger*. See *State v. Rance,* 85 Ohio St.3d 632, 636, 710 N.E.2d 699, 703 (1999); *Scuba v. Brigano*, 527 F.3d 479, 483 n.2 (6th Cir. 2007)(noting "[t]he Ohio courts cite federal Double Jeopardy jurisprudence as insightful to §2941.25 analysis, though not dispositive."). Accordingly, the double jeopardy issue was "fairly presented" to the state's highest court.

That being said, Kincaid's argument warrants no further habeas scrutiny. "[O]nce a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir.1989); and see *Ohio v. Johnson*, 467 U.S. at 499. "We cannot independently apply typical rules of statutory construction, including the *Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent." *Palmer v. Haviland ,* 273 Fed.Appx. 480, 486, 2008 WL 961640 (6th Cir. Apr. 9, 2008)(citing *McCloud v. Deppisch*, 409 F.3d 869, 875 (7th Cir.2005)). The Federal Court under habeas corpus review is bound by this assessment of

1:09 CV 0890                                    25

legislative intent. Consequently, Kincaid has not shown that the state decision was "contrary to"

or an "unreasonable application" of clearly established Federal law.


*B. New "ex post facto argument":*

Kincaid makes a noble attempt to tie the claim to federal constitutional violations in his

traverse, but in doing so, raises a convoluted argument which expands the scope of his claim

beyond the manner in which he presented it to the state courts. Kincaid's reply raises issues which

were never presented to the Ohio Supreme Court. These new arguments simply are not

cognizable absent a showing of "cause and prejudice" due to their lack of "fair presentation" and

Kincaid fails to demonstrate either. However, for Kincaid's edification, his argument will be

addressed.


Kincaid begins by interjecting *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006 -

Ohio - 856 (2006), *cert. denied*, 549 U.S. 979 (2006), and *Oregon v. Ice*,- U.S. -, 129 S.Ct. 711,

172 L.Ed.2d 517 (2009).  In *State v. Foster*, the Ohio Supreme Court re-evaluated the state's

sentencing scheme in light of the holdings of the U.S. Supreme Court in *Apprendi v. New Jersey,*

530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435  (2000),  *Blakely v. Washington,* 542 U.S.

296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *U.S. v. Booker*, 543 U.S. 220, 125 S.Ct. 738,

160 L.Ed.2d 621 (2005), and severed  §2929.14(E)'s judicial fact-finding requirements prior to

imposing consecutive sentences.  *Id*. at 20.  The Ohio Supreme Court struck down the statutory

requirements that permitted judges to impose heightened sentences only after engaging in

additional fact-finding.  *Foster,* at 19-20, 25. *Foster*  implemented the holdings from *Blakely* and

1:09 CV 0890                                      26

*Apprendi* that the Sixth Amendment's right to "public trial,  by an impartial jury" prohibited state

legislatures from requiring additional fact finding, "[o]ther than the fact of a prior conviction" for

" any fact that increases the penalty for a crime beyond the prescribed statutory maximum. . . ."

*Blakely v. Washington*, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)(quoting

*Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435  (2000)). [8]


In *Oregon v. Ice*, the U.S. Supreme Court evaluated a sentencing scheme, under the Sixth

Amendment, which like Ohio's former practice, favored concurrent sentencing but permitted state

trial courts to impose consecutive sentences only after making certain statutorily specified factual

findings.  See *Ice*., 129 S.Ct. at 715. The U.S. Supreme Court declined to extend *Apprendi* or

*Blakely* to consecutive sentencing.  Kincaid argues that the Ohio Supreme Court's rationale in

*State v. Foster* is now suspect, and that this court must now be guided by *Hicks v. Oklahoma*, 447

U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), which upheld a prisoner's Fourteenth

Amendment liberty interest to have his punishment fixed by a jury as he was  entitled under

Oklahoma law.


Tracking the legal reasoning presented is hazardous, but his point is that *Foster* took away

his "liberty" *ex post facto* of a statutory preference to concurrent sentences. The answer to this *ex*

*post facto* argument is:

---

[8]    Kincaid had argued to the Ohio Supreme Court in his fifth "assignment of error" for resentencing due to "[t]he trial court erred by ordering appellant to serve a consecutive sentence without first considering a concurrent sentence and by making findings not supported by the record." There he faulted the trial court for not following *State v. Edmonson*, 86 Ohio St. 3d 324 (1999), which *Foster* had abrogated. (See Resp. Ex. 14, Memorandum in Support of Jurisdiction pp. 12-14, ECF 6-1, 243/297); *Foster*, 109 Ohio St. 3d at 20.

1:09 CV 0890                                    27

 Although the Due Process Clause does not incorporate the specific prohibitions of
the Ex Post Facto Clause, retroactive judicial decision-making must comport with
"core due process concepts of notice, foreseeability, and, in particular, the right to
fair warning as those concepts bear on the constitutionality of attaching criminal
penalties to what previously had been innocent conduct." [*Rogers v. Tennessee*,
532 U.S. 451], at 459 [,121 S.Ct. 1693, 149 L.Ed.2d 697 (2001)] (citing *Bouie v.
City of Columbia*, 378 U.S. 347, 351, 352, 354-55, 84 S.Ct. 1697, 12 L.Ed.2d 894
(1964)); see also *United States v. Barton*, 455 F.3d 649, 654 (6th Cir.) ("when
addressing ex post facto-type due process concerns, questions of notice,
foreseeability, and fair warning are paramount"), *cert. denied*, 549 U.S. 1087, 127
S.Ct. 748, 166 L.Ed.2d 579 (2006).

 Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or
"fair warning," because *Blakely, Booker,* and *Foster* did not change the elements
necessary to convict petitioner ... and petitioner was aware of the potential
penalties he faced ... [B]oth before and after *Foster*, petitioner was on notice and
thus had "fair warning" of the potential penalties he faced and of the trial court's
discretion to impose those penalties.

*Bowers v. Duffy,*  2009 WL 2392143, 7 (S.D.Ohio)(quoting *Hooks v. Sheets*, 2008 WL 4533693

(S.D.Ohio October 3, 2008); see also *Smith v. Wilson*, 2008 WL 4758696 (N.D.Ohio October 29,

2008) (same)). The foregoing reflects the position of this Court also. See *Sanchez v. Konteh*, 2009

WL 539710 (N.D. Ohio). Thus, Kincaid's new legal argument is a "dead end."

### *CONCLUSION AND RECOMMENDATION*

 Following review of the arguments raised in the petition and applicable law, petitioner has

not demonstrated that he was in custody pursuant to state court judgment that resulted from a

decision that was "contrary to" or  involved in an "unreasonable application" of Federal law as

determined by the Supreme Court of the United States, or an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.  See 28 U.S.C.

§2254(d)(1)and (2).  Further, there has been no demonstrated need for an evidentiary hearing. The

1:09 CV 0890                                   28

petition for habeas corpus relief under 28 U.S.C. §2254 should be denied and dismissed.

                                    s/James S. Gallas
                                    United States Magistrate Judge

        *ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of

Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified

time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: August 21, 2009